In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors and Debtors–in–Possession,

Commercial Financial Services, Inc., Plaintiff,

v.

Gertrude A. Brady, Defendant.

Nos. 98–05162–R, 98–05166–R, 99–CV–402–H.

United States District Court, N.D. Oklahoma.

Nov. 21, 2000.

Larry M. Wolfson, Jerry L. Switzer, Jr., Mark D. Pollack, Jenner & Block, Chicago,

IL, Ronald Eugene Goins, Neal Edward Tomlins, Tomlins & Goins, Tulsa, OK, Jay S. Geller, Portland, ME, for Commercial Financial Services, Inc., plaintiffs.

Charles Robert Burton, IV, R. Thomas Seymour, R. Thomas Seymour Attys., Fred Randolph Lynn, Tulsa, OK, for Gertrude A. Brady, defendants.

### *ORDER*

HOLMES, District Judge.

This matter comes before the Court pursuant to the Court's inquiry into whether Jenner & Block, counsel for Commercial Financial Services, Inc., ("CFS"), complied with Fed.R.Civ.P. 11 in this case.

In applicable part, Rule 11(b)(3) provides as follows:

By presenting to the court ... a pleading ... an attorney is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

### I

For purposes of this order, the allegations at issue were first set forth in the complaint filed on February 11, 1999, at paragraphs 24, 25, and 40, which provided in their entirety as follows:

24. Following Jones' resignation as an officer and director of CFS, CFS determined that as a part of Jenner & Block's investigation, it was necessary to take custody of, and store in a secure place, the computer equipment (the "Equipment") then located in or near Jones' office on the fifty-fifth floor at CFS's headquarters.

25. The Equipment was critical to the investigation because, among other things, it contained significant financial information, files and accounts of CFS. It was important that the Equipment be secured so that no one could (a) tamper with, alter or delete the financial information contained therein, or (b) use the Equipment to obtain unauthorized access to CFS's main computer system.

40. Brady's unauthorized release of the Equipment to Jones compromised Jenner & Block's investigation of CFS's financial affairs and may have materially damaged CFS and its business operations.

These allegations also appeared in the First Amended Complaint filed March 12, 1999, at paragraphs 27 and 45, which provided in their entirety as follows:

27. The Equipment was critical to CFS's operations because, among other things, it contained significant loan and collection information, files and accounts of CFS. It was important that the Equipment be secured so that no one could (a) tamper with, alter or delete the financial information contained therein, or (b) use the Equipment to obtain unauthorized access to CFS's main computer system.

45. Brady's unauthorized release of the Equipment to Jones compromised the integrity of CFS's loan and collection records and may have materially damaged CFS and its business operations.

These allegations also appeared in the Second Amended Complaint filed January 13, 2000, at paragraphs 27 and 45, which provided in their entirety as follows:

27. The Equipment was critical to CFS's operations because, among other things, it contained significant loan and

collection information, files and accounts of CFS. It was important that the Equipment be secured so that no one could (a) tamper with, alter or delete the financial information contained therein, or (b) use the Equipment to obtain unauthorized access to CFS's main computer system.

45. Brady's unauthorized release of the Equipment to Jones compromised the integrity of CFS's loan and collection records and may have materially damaged CFS and its business operations.

## II

The facts on record in this case support the following findings:

1. In 1998, Investigative Group International, Inc. ("IGI"), under the direction of Jenner & Block, downloaded certain computers at CFS used by Jay Jones. All evidence indicates that the server in the closet, near Mr. Jones' office on the 55th floor, was not downloaded as part of this effort. It appears that this was the only computer used by Mr. Jones that was not downloaded.

2. In 1999, counsel for Mr. Jones provided CFS with the hard-drives from the computers used by Mr. Jones while at CFS.[1]

3. CFS maintained "backup" tapes for records on the CFS computer system. These "backup" tapes were maintained and stored at VMI, a media storage company located in Tulsa, Oklahoma. Jenner & Block disclosed the existence of such "backup" tapes to the U.S. Attorney by letter dated February 8, 1999.[2]

4. Jenner & Block was notified by IGI no later than December 16, 1998, that Mr. Jones' log on rights to access the CFS computer system[3] had been completely disabled no later than October 29, 1998. In this context, the term "disabled" involved the following: first, the CFS computer system was reprogrammed to reject Mr. Jones' user identification number; and, second, the CFS computer system was reprogrammed to reject Mr. Jones' password. Thus, because Mr. Jones' user identification number had been disabled, he could not have used his computers to access the CFS computer system even if he still had a working password. Furthermore, once Mr. Jones' computers were removed from the CFS premises, where they were plugged directly into the CFS computer system, the computers' software would have been required to meet certain

---

1. The transcript of a hearing in this matter before the Bankruptcy Court on May 2, 2000, reflects the following testimony of Jay Geller (page 186):

   Q. Now, there came a point in time when CFS got hard drives from Mr. Jones that had been in his server in the closet, isn't that right?

   A. I think we actually got them from Mr. Jones' counsel after we had asked that they be returned.

   Q. And that qualifies as coming from Mr. Jones, doesn't it, because counsel serves as his agent?

   A. I'm not going to debate the legalities with you, Mr. Seymour, I just am telling you we got it from counsel.

   Q. And when did you get them?

   A. I don't recall.

2. In the copy of this February 8, 1999, submitted to the Bankruptcy Court, CFS redacted that portion which referred to the "backup" tapes. Therefore, the existence of such "backup" tapes was not disclosed to the Bankruptcy Court.

3. CFS operated two types of computer networks, one a Novell-based network and the other a Windows NT-based network. All of CFS's customer account information was stored in the Novell portion of the network. The Windows NT portion of the CFS network was used for operating the e-mail system, word processing, and other functions.

security criteria in order to enter by modem over the telephone certain portions of the CFS computer system.[4] More importantly, a person obtaining access to the CFS computer network via the remote access server could not, under any circumstances, have obtained access to CFS's asset data (*i.e.*, information concerning customer credit card account information), because the asset data was stored on the Novell portion of the CFS computer network, and the CFS remote access server could not access the Novell portion of the CFS computer network. Thus, a person obtaining dial-up access to the CFS network would, for example, have access to the e-mail system to send and receive e-mail, but could not access any customer account information. Accordingly, as of December 15, 1998, the date CFS personnel delivered to Mr. Jones the computers at issue, Mr. Jones, using these computers, was no more able to access the customer account information in the CFS computer system than he would have been using any new computer purchased from a discount electronics store.

5. Jenner & Block was notified by CFS General Counsel Caroline Benediktson no later than February 25, 1999, that "[t]he

information on Jay's computers was not necessarily 'financial' information. We actually don't know what it was, particularly the big computer that IGI never downloaded."

6. Subsequent to the above-described notice that all access by Mr. Jones to the CFS computer system had been disabled and the above-described notice that CFS did not know what information was on Mr. Jones' computers, Jenner & Block prepared an affidavit on behalf of Fred C. Caruso. The affidavit, dated March 10, 1999, and filed with the Bankruptcy Court in support of CFS's Emergency Motion for Temporary Restraining Order, Preliminary Injunction and Other Relief, provides at paragraphs 29 and 42, as follows:

29. The Equipment was critical to CF"s operations because, among other things, it contained significant loan and collection information, files and accounts of CFS.

42. Brady's unauthorized release of the Equipment to Jones compromised the integrity of CFS's loan and collection records and may have materially damaged CFS and its business operations.[5]

---

4. In 1998, only a limited number of persons at CFS appear to have been authorized to access the CFS network by modem from outside CFS's offices through CFS's remote access server via a telephonic dial-up connection. In order to obtain dial-up access, an individual was required to have a valid user identification, a valid password, and an additional random password generated by a small device known as a "SecureID Token." The SecureID Token is a credit card or key chain sized device which generates a secure random number password at intervals of approximately one minute that is displayed on a small LCD display. The SecureID Token device contains an internal clock that is synchronized with the clock of a server at CFS so that the SecureID password when entered by a user obtaining dial-up access to the CFS net-

work will be recognized by the CFS dial-up network server.

5. The deposition of Fred Caruso taken on January 24–25, 2000, provides in part, as follows (page 16):

Q. Does CFS know what was on the computer equipment that was in or around Jay Jones' office, that has been the subject matter of this litigation, and that computer equipment left the building in December of '98?

A. Mr. Jones was the CFO of the company. I think there was a presumption that what was on the computer had to do with financial information of the company, but I don't think anyone can make absolute statements as to what financial information was on the computer.

7. Subsequent to the above-described notice that all access by Mr. Jones to the CFS computer system had been disabled and the above-described notice that CFS did not know what information was on Mr. Jones' computers, Jenner & Block prepared and filed both the First Amended Complaint and the Second Amended Complaints in this case.

8. Jenner & Block spoke with members of the media about the instant case against Gertrude Brady. On March 26, 1999, Jenner & Block billed one such communication with the media to CFS. An article appearing the next day, March 27, 1999, stated in part:

> In its complaint, CFS alleged that Brady drew on the money after being fired for overseeing the removal of computer equipment from J.L. Jones' office into Jones' hands. Jones, a co-founder of the debt collection, resigned from CFS a month and a half before Brady allegedly ordered that computer equipment from Jones' office be left for him to pick up. *CFS said the equipment contained important financial information on the company.* (Emphasis added).

9. There is no evidence in the record, including the billing records, that Jenner & Block ever undertook to determine whether there was any evidentiary support for the above-quoted allegations in the three complaints filed in this case.[6] Specifically, there is no evidence that Jenner & Block ever reviewed, or sought to review, the IGI downloading, the hard-drives, or the "backup" tapes to determine what information, if any, was contained on the computers delivered to Mr. Jones. There is also no evidence that Jenner & Block ever determined, or sought to determine, whether and to what extent, if any, Mr. Jones was capable of accessing the information in CFS' computer system using the computers delivered to him on December 15, 1998.

10. There is no evidence in the record to support the above-quoted allegations in the three complaints filed in this case.

III

■ The above-stated findings establish that Jenner & Block[7] clearly failed to meet its responsibilities under Fed. R.Civ.P. 11(b)(3). The question becomes, therefore, what is the appropriate response by this Court in light of such failure.

At the outset, it should be emphasized that the instant lawsuit is relatively minor in the context of the many complex and far-reaching CFS bankruptcy cases. Thus, caution is necessary to insure that any action taken here does not have a disproportionate impact on the ongoing CFS litigation.

■ At the same time, however, the principle of candor to the tribunal embod-

---

Q. I didn't ask you what it was presumed. I asked you if CFS knows what was on that computer, on those computers.
A. I personally don't.
Q. Insofar as you know, does anybody else at CFS know directly, in fact, what was on those computers?
A. I never asked that question of anybody else, so all I can answer to is my knowledge.

6. A pleading styled Debtors First Application for Allowance and Payment of Interim Com-

pensation and Reimbursement Expenses to Jenner & Block filed on April 28, 1999, provides at page 21 as follows:

> CFS filed its initial complaint against Brady on February 11, 1999, after conducting extensive factual and legal research.

7. For the record, the Jenner & Block attorneys listed on the pleadings in this case were Larry Wolfson, Jay S. Geller, and Jerry L. Switzer, Jr.

ied in Rule 11 must be respected. In this regard, the Court notes that CFS' General Counsel was held in contempt and CFS was sanctioned by the Court in this case, and as a consequence certain claims were stricken from the Second Amended Complaint at trial. Furthermore, the jury rejected CFS' remaining claims against Ms. Brady. As a result, CFS was both defeated and facing claims by Ms. Brady for attorney fees at the time this matter was settled. In short, various sanctions that may well have been appropriate under the circumstances have in fact occurred.

The Court believes that, under the unique facts present here, publication provides the most effective sanction by which to vindicate the principle of truthfulness required by the Federal Rules. Accordingly, the Court hereby finds that Jenner & Block alleged facts in the CFS pleadings filed in *CFS v. Brady*, Case No. 99–CV–402–H, for which there was no evidentiary support. The Court further finds that Jenner & Block did not reasonably inquire or investigate to determine whether any evidentiary support for such allegations existed. The Court concludes, therefore, that Jenner & Block disregarded its obligations to the Court, and in so doing violated Fed.R.Civ.P. 11(b)(3).[8] The public is hereby on notice of this wrongful conduct.

As a result of this Order, all pending motions in this matter are hereby moot.

IT IS SO ORDERED.

---

8. If Jenner & Block notifies the Court within ten (10) days hereof that it desires to contest the Court's conclusion that Rule 11 has been violated in this case, the Court will hold in abeyance a final determination of this issue and set the matter for hearing pursuant to Fed.R.Civ.P. 11(c) to insure that Jenner & Block has an opportunity to respond to the findings contained in Section II above.